■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SEKOU ODINGA, Also Known as NATHANIEL BURNS, Appellant. —Appeal by the defendant from a judgment of the Supreme Court, Queens County (Gallagher, J.) rendered April 19, 1984, convicting him of attempted murder in the first degree (six counts), upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

On October 23, 1981, three days after the Brinks armored-car robbery in Rockland County, during which a Brinks guard and two police officers were killed, the defendant's friend Mtayari Shabaka (also known as Samuel Smith) requested that defendant drive him to Queens. Shabaka, like the defendant, was associated with the Black Liberation Army and the Republic of New Afrika, groups that espouse a philosophy of revolution and armed struggle on behalf of blacks against what they believe is the racist, colonialist, and fascist regime known as the United States of America. Since Shabaka informed the defendant that the police were looking for him in connection with the Brinks robbery—and that he was "expectin' trouble at any time"—the two men armed themselves with automatic pistols and donned bullet proof vests. They proceeded first to Jamaica and then to Flushing in a gray Chrysler LeBaron with New Jersey license plate number 573-LDU, a license plate number which was apparently sought in connection with the Brinks robbery.

At approximately 12:40 P.M., three plainclothes Queens detectives in an unmarked car observed the gray Chrysler on Foch Boulevard and followed it to the Van Wyck Expressway, and subsequently onto Northern Boulevard. A highway patrol car which was assisting in the surveillance began to follow the Chrysler with its roof rack lights and siren on and attempted to cut off the Chrysler just before the Flushing Bridge. As the highway patrol car cut in front from the right, the Chrysler made a U-turn across the center divider and drove onto the bridge, colliding with the unmarked car in the process. Thereafter, a police emergency patrol truck occupied by two officers approached from the opposite direction on Northern Boulevard, followed the Chrysler onto the bridge with siren and lights on and collided into the Chrysler in an attempt to

impede its progress. The officer who was recorder in the truck then observed Shabaka, the passenger in the car, load a gun, extend his arm from behind the driver, and point the weapon at the truck. The officers heard a shot which hit the truck door and, in response, maneuvered the truck so that it again collided with the Chrysler. Despite the collision, the Chrysler was able to pull away, during which time Shabaka opened the passenger door and fired at the truck approximately six or more times. Subsequently, bullet holes were found in the truck's side door, windshield, front grille and battery. The Chrysler continued to 127th Place where it again made a U-turn across the divider, and came to a gradual stop at the corner of 127th Place and Northern Boulevard. As the car slowly stopped, the defendant and Shabaka both jumped out and fired at their pursuers from a combat stance, and then fled. The defendant was eventually apprehended in a nearby construction storage yard where he threw his gun down and surrendered.

At trial, the defendant sought to show that he had a reasonable belief, based on his own experiences and knowledge of the relations between law enforcement agencies and black radical groups, that the police officers in the truck were attempting to kill him when they collided into the Chrysler with their truck, and that he was therefore justified in employing deadly force in order to defend himself. In addition to the justification defense, he sought to introduce the same evidence in support of the contention that he was suffering from extreme emotional disturbance caused by law enforcement efforts to kill black radicals and crush their organizations. The defendant further sought, *inter alia,* to present the testimony of witnesses he alleged were "experts" on the subject of law enforcement relations with black radical groups. The trial court excluded the proffered evidence as irrelevant and refused the defendant's requests to charge the jury on the law of justification and extreme emotional disturbance. The defendant argues, *inter alia,* that the court's refusal to charge justification and extreme emotional disturbance constituted reversible error. We disagree.

In order to establish entitlement to a charge on justification, there must be evidence that the defendant reasonably believed that another person was using or about to use deadly force against him and that he reasonably believed his use of deadly force was justified "to avert the perceived threat" *(People v Goetz,* 68 NY2d 96, 106; Penal Law § 35.15). Moreover, in "determining whether a justification charge is warranted, the

evidence at trial must be viewed in the light most favorable to the defendant, and *if* that evidence sufficiently supports the asserted defense the court should instruct the jury as to that defense and must do so upon request" *(see, People v Acevedo,* 117 AD2d 813, *lv denied* 68 NY2d 665 [emphasis added]). Of course, "when no reasonable view of the evidence would support a finding of justification, then the court is under no obligation to submit the question to the jury" *(see, People v Acevedo, supra,* at 813-814). Moreover, while the defendant is entitled to the most favorable view of the evidence, the jury may not resort to " ' "sheer speculation" ' " in considering the defense *(see, People v Alston,* 104 AD2d 653, 654, quoting from *People v Scarborough,* 49 NY2d 364, 373, quoting from *People v Discala,* 45 NY2d 38, 43).

On the record before us, we perceive no reasonable view of the evidence which supports the submission of a justification charge to the jury. Any reasonable assessment of the evidence adduced at trial reveals that the conduct of the pursuing officers represented a measured response, related in its intensity to the increasingly aggressive conduct displayed by the defendant and his accomplice as the rapidly developing circumstances of the chase unfolded.

We note, initially, that the record supports the People's contention that the defendant could have exercised the option of peacefully surrendering prior to his escalating the confrontation by merely pulling his automobile over after observing the highway patrol car. At this juncture, the police had engaged in no conduct which could be reasonably construed as overtly aggressive or menacing to the defendant's personal safety. Indeed, the record reveals that prior to the defendant's violent attempt to evade arrest, the pursuing highway patrol car merely activated its roof rack lights and siren so as to signal the defendant to pull over. The defendant's assertion that he reasonably feared that the police were intent upon killing him even before he attempted to flee rests upon the wholly subjective perception that the pursuing officers would employ unwarranted deadly force in effecting his arrest since law enforcement personnel had allegedly used "oppressive tactics" against black activists in the past.

Although on two occasions the police officers struck the defendant's automobile with their vehicle, the police sought to apprehend the defendant in this fashion only after he himself materially heightened the intensity of the already frenetic chase by recklessly traversing the highway median in a desperate attempt to avoid arrest. We note in this respect that

prior to the collisions—and before any shooting had taken place—the pursuing officers, on at least one occasion, attempted to block the defendant's path without physically impacting his automobile, a tactic which failed to induce the defendant and his accomplice to abandon their attempt to escape. Moreover, the record indicates that immediately before the second collision with the truck occurred, the defendant's accomplice fired at the officers in order to deter their pursuit.

In short, there was lacking in the record evidence creating a question for the jury's consideration with respect to the alleged reasonableness of the defendant's belief that he was confronted with deadly force under circumstances which would justify his own use of such force (see, People v Goetz, supra).

Contrary to the defendant's contentions, the court properly excluded the defense "experts' " testimony regarding remote acts of other law enforcement agencies against black radicals as that evidence lacked sufficient relevance and probative value with regard to the specific events of October 23, 1981. Finally, the defendant was not entitled to a jury charge on the defense of extreme emotional disturbance. It is clear from the defendant's testimony that he believed his behavior was entirely rational and justified from his own point of view. He never suggested that his thinking was disturbed, nor that he suffered any loss of self-control or " 'mental infirmity', not rising to the level of insanity" usually associated with such defense (see, People v Walker, 64 NY2d 741, 743, rearg dismissed 65 NY2d 924, quoting from People v Patterson, 39 NY2d 288, 302, affd 432 US 197). In the absence of any evidence to support a finding that the defendant acted under the influence of extreme emotional disturbance, the court properly declined to submit the defense to the jury.

We have examined the defendant's remaining contentions and find them to be without merit. Brown, J. P., Kunzeman, Rubin and Kooper, JJ., concur.