956 F.2d 275
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
James SNAMAN, Plaintiff-Appellant,
v.
Richard THORNBURGH, Attorney General, in his official
capacity as Attorney General of the United States,
Defendant-Appellee,
and
Michael Quinlan, in his official capacity as Director of
Bureau of Prisons, and Calvin R. Edwards, in his
official capacity as Western Regional
Director of the Bureau of
Prisons, Defendants.
 No. 91-35165.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 5, 1991.*
Decided Feb. 25, 1992.
 
 Before TANG, O'SCANNLAIN and RYMER, Circuit Judges.
 MEMORANDUM**
 James Snaman appeals the district court's dismissal of his suit against various Justice Department officials for alleged constitutional violations in connection with drug testing in the federal prison system. We affirm.
 
 
 1
 * Pursuant to regulation, the Bureau of Prisons (the "Bureau") engages in a program of random drug testing of its inmates. See 28 C.F.R. § 550.30. Such testing is accomplished by randomly selecting prisoners, offering them eight ounces of water to drink, and then allowing them two hours to provide a urine sample. During the two-hour period the inmate may not drink any additional fluids, and is under the constant observation of a same-sex prison guard. If an inmate fails to produce a urine sample during the two-hour period, he is subject to disciplinary proceedings. A presumption arises that the inmate's failure to produce a urine sample was willful, but the inmate may rebut the presumption at the hearing.
 
 
 2
 Snaman was randomly selected for such drug-testing procedure on January 30, 1990. Snaman failed to produce a urine sample within the allotted two-hour period. He does not dispute the fact that he did not produce the sample, but claims he was simply unable, not unwilling, to urinate. The following day, Snaman produced a urine sample within a 40 minute period. Urinalysis of the sample did not reveal any drug use by Snaman. At a disciplinary hearing two weeks later, Snaman was ordered into a segregated disciplinary unit for 60 days, and 100 days of statutory good time were ordered forfeited.
 
 
 3
 Snaman, incarcerated at the Sheridan Federal Correctional Institution ("Sheridan") and proceeding pro se, filed suit in district court against then-Attorney General Richard Thornburgh, Bureau of Prisons Director Michael Quinlan, Western Regional Director Calvin Edwards, and various officials at Sheridan. Snaman asserts several constitutional violations connected with this incident.[1] First, he alleges that by failing to provide alternatives to providing a urine sample, such as blood testing, and by refusing to extend the time or increase the fluids allowed as part of the urine sample procedure, the prison officials have acted in an arbitrary and capricious manner in violation of the Due Process Clause of the Fifth Amendment. Second, Snaman urges that the disciplinary hearing he was provided violated due process. Third, by disciplining Snaman for conduct that he claims was not willful, Snaman contends that the prison officials have inflicted cruel and unusual punishment in violation of the Eighth Amendment. Snaman seeks injunctive relief and money damages.
 
 
 4
 On November 28, 1990, the district court granted defendants' motion to dismiss, declining to address certain procedural questions and reaching the merits because the court found the merits to be dispositive. The court held that Snaman had failed to establish in his complaint that his constitutional rights had been violated. Snaman timely filed notice of appeal on January 22, 1991. We review the district court's grant of defendants' motion to dismiss de novo. Kruso v. International Tel. & Tel., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 110 S.Ct. 3217 (1990).
 
 II
 
 5
 On appeal, the government contends that the district court's dismissal should be affirmed because Snaman failed to effect personal service of process on the prison officials named in his suit, as required under Federal Rule of Civil Procedure 4(d). As the government rightly points out, "[d]efendants must be served in accordance with Rule 4(d) of the Federal Rules of Civil Procedure, or there is no personal jurisdiction." Jackson v. Hayakawa, 682 F.2d 1344, 1347 (9th Cir.1982) (footnote omitted).
 
 
 6
 The district court dismissed on other grounds. Although we may affirm the district court on any basis supported by the record, see Marino v. Vasquez, 812 F.2d 499, 508 (9th Cir.1987), we decline the government's invitation to affirm on the basis of lack of personal jurisdiction. The question of whether personal jurisdiction exists turns on factual determinations about the service Snaman made that would require a remand for resolution, since the district court did not rule on this basis and hence made no findings of fact in this area.
 
 III
 
 7
 Snaman alleges that the Bureau's drug testing program under 28 C.F.R. § 550.30 violates due process. In evaluating claims that a government action violates substantive due process, we do not sit as a super-legislature. The mere fact that we might not adopt a regulation if we were the policymakers is insufficient to hold such regulation unconstitutional under the due process clause. Rather, "[a] rational relationship to a legitimate government interest will normally suffice to uphold the regulation." Beller v. Middendorf, 632 F.2d 788, 808 (9th Cir.1980), cert. denied, 454 U.S. 855 (1981).
 
 
 8
 Under this standard, the Bureau's drug testing scheme surely must pass muster. Reducing drug use in federal prisons manifestly serves to promote the health, safety, morals, and general welfare of the inmates. Reduced drug use among federal inmates also serves to promote the safety and welfare of the general public, as fewer drug-addicted inmates will be released into society at the end of their prison terms.
 
 
 9
 Random drug-testing is obviously rationally related to the objective of reducing inmate drug use. Moreover, the particular method of drug-testing used here, urinalysis, is not clearly arbitrary and unreasonable. See National Treasury Employees Union v. Von Raab, 109 S.Ct. 1384, 1394 n. 2 (1989) (urinalysis can be "highly accurate, assuming proper storage, handling, and measurement techniques"). We are not here to second-guess the methods used by the Bureau to achieve its legitimate objective of reducing drug use among inmates, and we cannot say that failing to provide blood testing as an alternative, given the added costs and administrative burden of running two parallel drug-testing systems, is irrational. See Skinner v. Railway Labor Executives Ass'n, 109 S.Ct. 1402, 1409 (1989) (urine samples sometimes preferred over blood samples "because drug traces remain in the urine longer than in blood" and because blood samples can only be taken at a medical facility). Further, the limits on the consumption of liquids and the constant observation during the two-hour period are needed to prevent dilution or adulteration of the urine sample, see 28 C.F.R. § 550.30(c), and hence are not arbitrary or unreasonable. We conclude that the Bureau's random drug-testing program is not so irrational or arbitrary as to violate substantive due process.
 
 IV
 
 10
 Snaman next contends that the disciplinary hearing regarding his failure to produce a urine sample violated procedural due process. The Supreme Court has held that "[w]here a prison disciplinary hearing may result in the loss of good time credits, ... the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity ... to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." Superintendent, Mass. Correctional Inst. v. Hill, 472 U.S. 445, 454 (1985) (citing Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974)). According to administrative records that Snaman does not dispute, he was afforded all of these rights. Moreover, "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." Id. at 455. Here, there was unrefuted eyewitness testimony to indicate that Snaman failed to provide a urine sample in the allotted two-hour period.
 
 
 11
 Nonetheless, Snaman asserts a violation of due process in the hearing's rebuttable presumption that a failure to provide a urine sample was willful. See 28 C.F.R. § 550.30(c). Such a rebuttable presumption essentially amounts to shifting the burden of proof to Snaman on the issue of his state of mind. At his hearing, Snaman was afforded an opportunity to produce evidence on the issue of willfulness, such as showing a medical basis for his inability to produce a urine sample, but failed to do so.
 
 
 12
 "Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context." Hill, 472 U.S. at 456 (citations omitted). Yet even in a criminal prosecution, due process is not offended by shifting the burden of proof to the defendant to prove his lack of a willful state of mind. See Patterson v. New York, 432 U.S. 197, 206-10 (1977) (due process not violated by New York law requiring a criminal defendant to show by a preponderance of the evidence that he acted under the influence of extreme emotional disturbance). The disciplinary proceeding granted Snaman met the standards of due process set forth in Wolff and Hill, and hence we reject the claim of a denial of procedural due process.
 
 V
 
 13
 Finally, Snaman alleges that the deprivation of his good time credits and his temporary assignment to the disciplinary unit at Sheridan constituted cruel and unusual punishment in violation of the Eighth Amendment. Because Snaman failed to show a lack of willfulness at his disciplinary hearing, there is simply no basis for his contention that he was punished for non-volitional behavior. Moreover, we cannot accept the notion that the mere lengthening of a sentence (or, more precisely, declining to shorten a sentence) by 100 days could establish an Eighth Amendment violation. See Harmelin v. Michigan, 111 S.Ct. 2680, 2705 (1991) (Kennedy, J., concurring) (Eighth Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime"); see also id. at 2686 (opinion of Scalia, J.) ("the Eighth Amendment contains no proportionality guarantee"). Hence, we only address the question of whether assignment to a segregated unit is cruel and unusual punishment.
 
 
 14
 Prison officials must satisfy basic human needs such as "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir.1986), cert. denied, 481 U.S. 1069 (1987). Snaman, however, does not allege that he has been deprived of any of these necessities. But "idleness and the lack of programs are not eighth amendment violations." Id. at 1106. Particularly since Snaman concedes that he violated 28 C.F.R. § 550.30, the mere fact of having to serve sixty days in the disciplinary unit does not arise to the level of cruel and unusual punishment proscribed by the Eighth Amendment.
 
 
 15
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a), Ninth Circuit R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit R. 36-3
 
 
 [1]
 Consistent with Snaman's status as a pro se litigant, we have been generous in characterizing the allegations in his complaint. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972)