No. 20704.

HOWARD EDWARD HENDERSON *v.*
THE PEOPLE OF THE STATE OF COLORADO.
(397 P.2d 872)

Decided January 4, 1965.

Gerald N. Mellman, Leland S. Huttner, for plaintiff in error.

Duke W. Dunbar, Attorney General, Frank E. Hickey, Deputy, John E. Bush, Assistant, for defendant in error.

*En Banc.*

Mr. Justice Moore delivered the opinion of the Court.

We will refer to the plaintiff in error as the defendant. On March 29, 1962, an information was filed against him in the district court of the City and County of Denver, in which it was charged that on March 21, 1962, he "* * * did feloniously, wilfully and of his premeditated malice aforethought, kill and murder one GONZALE HARDIN HENDERSON * * *." To this information the defendant entered pleas of not guilty and not guilty by reason of insanity. He was thereupon committed to the psychopathic ward of the Colorado General Hospital for observation, pursuant to the mandate of the statute.

On November 19, 1962, the case came on for trial on the issues raised by both of said pleas. The people presented evidence in support of the charge, and rested. The defendant did not take the stand. On his behalf seven

witnesses were called, and the defense then rested. The district attorney thereupon inquired of the court as to whether it would admit testimony of two psychiatrists who would say that the defendant was sane. The court in response to the query stated as follows:

"THE COURT: As the Court reviews the evidence, I don't think the question of sanity has been raised. As a consequence, I am not going to submit the matter to the jury. The presumption of sanity continues, and it will not be an issue in this case."

To this ruling counsel for the defendant objected. The following then took place:

"MR. LITTLE: No. We would like to state for the record the dilemma we are placed in by the Supreme Court and the various statutes on this point. We are in the position where the Court I think has the requirement of making the determination which the Court has just made, in that if we show this evidence at this point it might be erroneous, and if we don't show it it might be erroneous. I don't know what the answer to it is.

"THE COURT: I will take the responsibility, Mr. Little, by saying that the Court rules as a matter of law that the presumption of sanity has never been rebutted or displaced, and as a consequence the statute cannot be followed and I am ruling out any expert testimony in that regard.

"MR. LITTLE: I just wanted to get that into the record, just what our position and your dilemma is.

"THE COURT: All right. Do you have any rebuttal?

"MR. LITTLE: No, we have no rebuttal testimony."

Following the foregoing colloquy the district attorney addressed himself to the court as follows:

"* * * We would at this time renew our request of the Court that the Court permit us to show to this jury the evidence available to us on the question of this defendant's sanity or insanity. We say that for the reason that there might be said to exist in this case a question

having been raised by the defendant through a witness for the defendant who said that when she saw this defendant he had a frightening look on his face, or words to that effect, and if it were said that this statement raised the issue of insanity, then it must also be said that the presumption of sanity no longer exists and therefore this case must stand before the jury without any presumption of sanity or insanity and the prosecution not having proven its case beyond a reasonable doubt on the question of sanity. We would, therefore, ask to show that evidence to substantiate our burden of establishing the defendant's sanity beyond a reasonable doubt, and we would call two psychiatrists from the Colorado Psychopathic Hospital, one Dr. Arnold Maerov and one Dr. John M. Macdonald, who would testify that they have examined the defendant pursuant to an order of this Court, and again pursuant to the statute; that after considerable examination, conference and conversation with this defendant, they are of the opinion that the defendant is sane within the meaning of the statutes involved in this case. For that reason, your Honor, we would ask at this time that we be permitted to present this evidence to the jury."

The court thereupon ruled as follows:

"THE COURT: If such is an offer of proof, the Court rejects the same, and if it is in the form of a motion, the motion is denied."

Pursuant to the court's ruling, which was made in the absence of the jury, the court by Instruction No. 1 directed as follows:

"As to the plea of not guilty by reason of insanity, the Court will direct the jury to enter a verdict finding the defendant sane. There therefore remains for the determination of this jury the plea of not guilty to the charge of murder as charged in this information, and this is the issue you are now called upon to determine."

With reference to the instructions which the trial court

gave the jury, the district attorney made the following record:

"Let the record also reflect that the prosecution has examined the various forms of verdict proposed to be submitted by the Court to the jury, including a verdict of not guilty, one of murder in the first degree fixing the penalty at death, one of murder in the first degree fixing the penalty at life imprisonment, and one finding the defendant, Howard Edward Henderson, sane.

"At this time, for the purposes of the record, we would request of the Court that the Court submit to the jury the form of verdict finding the defendant, Howard Edward Henderson, insane, even though the Court has directed the jury to return the verdict of sane.

"THE COURT: Why?

"MR. SPIEGLEMAN: Just to comply with that Mundy case we just think it should be submitted to them."

The court refused to submit a verdict to the jury on the issue of insanity, notwithstanding that the district attorney, as well as counsel for the defendant, requested that such an instruction be given. Counsel for the defendant tendered an instruction on the issue of insanity, which was refused, and also tendered a form of verdict submitting that issue for the determination of the jury, which likewise was refused.

The jury found the defendant guilty of first degree murder and fixed the punishment at death. The court entered judgment on the verdict. Motion for a new trial was filed and denied.

The argument of counsel for defendant is presented in this court under nine captions. Consideration of one of these points requires a reversal of the judgment and makes it unnecessary to lengthen the opinion with a detailed analysis of the circumstances surrounding the homicide. It is argued by counsel for defendant that:

"The Court erred in directing the jury to return a verdict of sanity, and further erred in failing to instruct

and submit verdicts to the jury on the question of insanity. Not only was the lower court in error by directing the jury to find the defendant sane, but was duty bound under 39-8-4 1953 C.R.S. as amended and under the case of *Mundy vs. The People,* 105 Colo. 547, 100 Pac. 2d 584, and *Cruz vs. People,* 147 Colo. 528, 364 Pac. 2d 561 to both instruct the jury on the questions of insanity and to submit verdicts therein, neither of which was done."

The attorney general readily agrees that if the decision of this court in *Mundy v. People,* 105 Colo. 547, 100 P.2d 584, is followed, then the judgment must be reversed and the cause remanded for a new trial. His brief contains the following statement:

"In directing a verdict of sanity, the trial court also rejected the holding in the *Mundy* case. It is our position that the trial court properly rejected the holding in the *Mundy* case and that such decision must be overruled. * * *"

██ It is basic to our judicial system that the judges who preside in the trial courts shall follow the law as announced by this court. It does not lie within the discretion of a trial judge to "reject" the "holding" of this court in any case, even though he might believe that the law should be other than that clearly indicated by our decisions. The decision of this court in *Mundy v. People,* supra, was very clearly decisive of the question presented to the trial court. That decision was recognized as being applicable to the facts disclosed by the record in this case in the opinion of this court in *Cruz v. People,* 147 Colo. 528, 364 P.2d 561. From that opinion we quote the following:

"* * * Upon trial neither the People nor this defendant offered any evidence even remotely related to the issue raised by the plea of insanity. Nevertheless, defendant, had he so desired, was entitled to have appropriate forms of verdict on this issue submitted to the

jury. See *Mundy v. People,* 105 Colo. 547, 100 P.2d 584. * * *"

The language above quoted from *Cruz v. People,* supra, and that contained in *Mundy v. People,* supra, is clear and meaningful. Its controlling effect upon the question under discussion should have been most apparent to the trial court.

 The reasons for the rule adopted in this jurisdiction are aptly set forth in this court's opinion in the *Mundy* case. That rule has never been changed or modified by this court. On the contrary, the *Mundy* case has been repeatedly cited with approval on various questions involving pleas of insanity. *Becksted v. People,* 133 Colo. 72, 292 P.2d 189; *Archina v. People,* 135 Colo. 8, 307 P.2d 1083; *Leick v. People,* 136 Colo. 535, 322 P.2d 674; *Castro v. People,* 140 Colo. 493, 346 P.2d 1020; *Robbins v. People,* 142 Colo. 254, 350 P.2d 818; *Cruz v. People,* supra. The trial court should not have "rejected" the holding of this court as announced in an opinion which has become well established in the law of this jurisdiction relating to pleas of insanity in criminal cases. The significant fact is that whenever a trial court "rejects" well-established law and undertakes to "overrule" the appellate court, it generally results in the granting of a new trial in the event of conviction. In *Becksted v. People,* supra, we had occasion to use language which will bear repeating here. We said that so long as trial courts fail to follow well known rules governing the trial of criminal cases, "this Court will be compelled to reverse judgments of guilt; the taxpayers of the several counties will continue to bear the heavy costs of second trials in murder cases; and ultimate justice will continue to be delayed."

One further matter should receive consideration. The district attorney, before closing his evidence, expressed concern as to whether he would be permitted to offer expert testimony concerning the mental condition of the defendant as a part of his case in chief. However he

made no formal offer of proof at that time. At the close of all the evidence he made a formal offer to prove by expert testimony that the defendant was sane. This offer was denied.

■■ Whatever may have been the practice heretofore, we now hold that since the rule announced in the *Mundy* case places the determination of the issue of insanity, when raised, solely within the province of the jury, and since a jury has the discretion to infer, "* * * a lack of mental capacity from the appearance or conduct of the accused while in their presence, or from the factual circumstances disclosed by the evidence * * *," evidence of sanity should not be excluded whether offered as part of the case in chief or upon rebuttal. It is true that an accused is presumed to be sane until the contrary is made to appear. It is also true that the people are not required to prove, in the first instance, that the defendant is sane. This does not mean, however, that the prosecution is prevented from fortifying the presumption of sanity by the presentation of evidence tending to establish the fact of sanity.

■ The trial court erred in refusing to hear the testimony set forth in the offer of proof made by the district attorney. If such proof is offered upon a retrial, either as part of the case in chief or as rebuttal, it should be admitted.

The judgment is reversed and the cause remanded for a new trial.