The PEOPLE of the State of
Colorado, Petitioner,

v.

Edwin D. HILL, Respondent.

No. 96SC170.

Supreme Court of Colorado,
En Banc.

March 17, 1997.

Rehearing Denied April 7, 1997.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, John Daniel Dailey, Deputy Attorney General, Robert Mark Russel, First Assistant Attorney General, Laurie A. Booras, Assistant Attorney General, Criminal Enforcement Section, Denver, for Petitioner.

David F. Vela, Colorado State Public Defender, C. Keith Pope, Deputy State Public Defender, Denver, for Respondent.

Justice MARTINEZ delivered the Opinion of the Court.

We granted certiorari to review the decision of the court of appeals in *People v. Hill*, 920 P.2d 828 (Colo.App.1995), and decide whether a defendant is entitled to have the question of his sanity determined by a jury where he has presented no evidence of insanity. The trial court instructed the jury that the law presumes everyone to be sane and that the defense had failed to present any evidence of insanity. The jury found the defendant sane at the time of the commission

of the charged offenses. The court of appeals held that the jury instruction amounted to a directed verdict against the defendant which violated the defendant's Sixth Amendment right to a jury trial and that the instruction impermissibly characterized the presumption of sanity as a mandatory presumption. *Hill*, 920 P.2d at 830, 831. The court of appeals reversed the trial court judgment and ordered a new trial on the issue of sanity. *Id.* at 831. We reverse.

## I.

In 1988, the prosecution charged Edwin D. Hill with six counts of aggravated robbery in violation of section 18–4–302, 8B C.R.S. (1986), after Hill allegedly robbed several individuals at gunpoint on separate occasions. Hill pled not guilty by reason of insanity and a trial was held to determine if Hill was legally insane at the time of the offenses, pursuant to section 16–8–105(2), 8A C.R.S. (1986). Hill presented an expert witness, Dr. Dean Plazak, who testified at Hill's first sanity trial that in his opinion, at the time of the armed robberies, Hill suffered from a condition known as cocaine delusional disorder. According to Dr. Plazak, this disorder is characterized by a psychosis resulting from brain damage caused by long-term cocaine use. Dr. Plazak also testified that this psychosis can remain with a drug user for months after the user has ceased to ingest cocaine, and that its symptoms, which resemble those of paranoid schizophrenia, include delusions, visual hallucinations, and "formication."[1]

The jury returned a verdict finding Hill legally sane at the time of the commission of the armed robberies. Another jury found Hill guilty of five of the six counts of aggravated robbery at the conclusion of a separate trial on the merits. Hill appealed the decision to the court of appeals, asserting that the trial court committed reversible errors during both trials.

The court of appeals affirmed Hill's conviction on the merits, but reversed the judg-

---

1. Dr. Plazak defined "formication" as "a condition that has to do with the individual becoming convinced that there are bugs crawling either on themselves—but in many instances, under their skin."

ment of sanity and remanded for a new trial on the sanity issue. *People v. Hill*, No. 90CA0466, slip op. at 1, 13 (Colo.App. July 23, 1992) (not selected for publication). The court of appeals held that the trial court abused its discretion in denying Hill's challenge for cause as to one of the prospective jurors and that this error was not harmless. *Id.* at 5.

Before commencement of the defendant's second sanity trial, we issued our decision in *Bieber v. People*, 856 P.2d 811 (Colo.1993). In *Bieber*, we declined to recognize "settled insanity" as a valid insanity defense and upheld the trial court's denial of the defendant's request for a jury instruction on that defense. *Id.* at 818. We defined settled insanity as " 'insanity' arising from the long-term use of intoxicants but separate from immediate intoxication," *id.* at 815, and stated that, in terms of moral blameworthiness, "[t]here is no principled basis to distinguish between the short-term and long-term effects of voluntary intoxication by punishing the first and excusing the second." *Id.* at 817.[2]

Hill conceded that, after *Bieber*, Dr. Plazak's testimony was no longer relevant to the issue of Hill's legal insanity at the time of the robberies because it only supported a settled insanity defense. Hill presented no other expert witnesses to testify to his mental condition at his second sanity trial. Instead, Hill relied solely on his own testimony as evidence of insanity and contended that this evidence was sufficient to overcome the statutory presumption of sanity.

Hill testified that his long history of drug use resulted in his becoming involved in various criminal activities and suffering from extensive loss of memory. He also testified that he suffered from a mental disease or defect in that "[his] mental process was that of a drug addict." He stated that "during those years" he was not thinking at all, was "just going through the motions," and that "only sometimes" did he perceive the difference between right and wrong. He explained that "something may be right in the eyes of the social public, but, to me, it wasn't

or that it didn't make that much of a difference." Hill further testified that during the three-month period in which he committed the charged offenses he suffered from feelings of isolation and depression.

During extensive and detailed questioning, Hill repeatedly denied having any recollection of the armed robberies for which he was charged. He denied any memory of the people or places involved. As a result of his claim that he suffered nearly total lack of recall as to any of the details of his daily life when the crimes were committed, he did not testify as to his mental condition at the specific times of the commission of the offenses, but only generally during a three month period surrounding the crimes and in the years preceding the crimes.

The trial court found that no evidence had been introduced about Hill's state of mind at the time of the commission of the offenses, and that Hill's state of mind at unspecified times was a result of voluntary intoxication. The trial court concluded that the statutory presumption of sanity had not been overcome and issued the following instruction to the jury:

#### Instruction No. 4

The law presumes everyone to be sane. The People have rested on the presumption of sanity. No evidence of insanity has been presented by the defense.

The jury returned a verdict finding the defendant sane at the time of the commission of the armed robberies.

On appeal, Hill argued that the trial court erred in submitting this instruction because it effectively directed a verdict against Hill in violation of his Sixth Amendment right to a jury trial. Hill did not challenge the trial court's finding that the defense did not present any evidence of insanity, although Hill's trial attorney had disagreed with the trial court's conclusion. Nor did Hill argue on appeal that evidence of the state of mind of the defendant, while probative of settled insanity, was also admissible to show that the

---

**2.** In Colorado, self-induced intoxication is not a valid defense to a criminal charge, but evidence of self-induced intoxication may be offered to negate the existence of a specific intent if such intent is an element of the crime charged. § 18–1–804, 8B C.R.S. (1986).

defendant was insane at the time of the commission of the offenses pursuant to the statutory definition of insanity.[3] In *Bieber* we rejected the defense of settled insanity and approved a trial court's denial of an instruction on that defense, 856 P.2d at 818, but we did not address whether evidence probative of settled insanity is admissible to show insanity as defined by the General Assembly. We accept the trial court's finding that no evidence of insanity was presented and confine our analysis to the issue raised before the court of appeals and presented for review by the petition for certiorari. *See Cherry Hills Resort Dev. Co. v. City of Cherry Hills Village*, 757 P.2d 622, 625 n. 3 (Colo.1988). We do not address whether the trial court's finding of no evidence of insanity was erroneous or whether evidence was improperly excluded because it was probative of settled insanity.

We granted certiorari to determine: "Whether a defendant is entitled to have the question of his sanity determined by a jury where he has presented no evidence of insanity sufficient to overcome the presumption of sanity."

## II.

In order to resolve the issue before us, we must first determine whether the statutory procedure in effect in Colorado at the time of Hill's offenses requires the sanity issue to be submitted to the jury where no evidence of insanity has been introduced. We then must determine whether the court of appeals correctly concluded that the Sixth Amendment right to a trial by jury in criminal cases requires the sanity issue to be submitted to the jury in the absence of any evidence of insanity.

## A.

The defense of insanity is raised by a plea of not guilty by reason of insanity made at the time of arraignment. *People v. Low*, 732 P.2d 622, 629 (1987); *see* § 16–8–103(1), 8A C.R.S. (1996 Supp.); *see also* § 18–1–802(1), 8B C.R.S. (1996 Supp.). For offenses committed before July 1, 1995, Colorado employs a bifurcated trial procedure if an insanity plea is made, and the sanity issue is resolved first in a separate proceeding. *See* § 16–8–104, 8A C.R.S. (1996 Supp.). If a defendant is found to have been insane at the time of the commission of the offense, no trial on the merits is held because the defendant is deemed not to be responsible for his acts. *See* § 16–8–105(4), 8A C.R.S. (1996 Supp.); § 18–1–802(1), 8B C.R.S. (1996 Supp.).[4] Conversely, a finding of sanity causes the case to proceed to a separate trial on the merits,[5] and puts the case in the same posture as if the defendant had never entered an insanity plea. Although the disposition of the sanity issue is resolved in a separate proceeding from the disposition of the defendant's plea of not guilty, the two proceedings constitute one trial. *See Leick v. People*, 136 Colo. 535, 543–44, 322 P.2d 674, 679 (1958).

A presumption of sanity operates to relieve the prosecution of introducing evidence of sanity until some evidence of insanity is introduced. *See People v. Kernanen*, 178 Colo. 234, 239, 497 P.2d 8, 11 (1972). The statute which sets forth the presumption provides that "[e]very person is presumed to be sane; but, once any evidence of insanity is introduced, the people have the burden of proving sanity beyond a reasonable doubt." § 16–8–105(2), 8A C.R.S. (1986). The purpose of the presumption is to promote trial efficiency by

---

**3.** The definition of "insanity" provides:

"A person who is so diseased or defective in mind at the time of the commission of the act as to be incapable of distinguishing right from wrong with respect to that act is not accountable. But care should be taken not to confuse such mental disease or defect with moral obliquity, mental depravity, or passion growing out of anger, revenge, hatred, or other motives, and kindred evil conditions, for when the act is induced by any of these causes the person is accountable to the law."

§ 16–8–101(1), 8A C.R.S. (1986).

**4.** Once a defendant is found not guilty by reason of insanity, "the court shall commit the defendant to the custody of the department of human services until such time as he is found eligible for release." § 16–8–105(4), 8A C.R.S. (1996 Supp.).

**5.** Section 16–8–104.5, 8A C.R.S. (1996 Supp.) provides that the sanity issue and the merits are tried in the same proceeding, before the same trier of fact, for offenses committed after July 1, 1995.

relieving the prosecution of the burden of proving the defendant's sanity until evidence of insanity is admitted. This requirement that some evidence of insanity be introduced to rebut the presumption of sanity is procedural in nature, and does not affect a defendant's substantive right to raise an insanity defense:

> The requirement that the defendant present only *some* evidence of insanity to rebut the presumption is wholly proper, since a presumption is not evidence, and the primary purpose of the presumption of sanity is merely procedural convenience in those trials in which sanity is not really an issue.

*Kernanen,* 178 Colo. at 239–40, 497 P.2d at 11–12.

The defendant cites several past decisions of this court in support of his position that the threshold question of whether some evidence of insanity has been introduced is for a jury to answer. It is true that several of our prior decisions have suggested that the question of sanity must be decided by a jury even where the defendant has completely failed to introduce evidence of insanity. *See, e.g., Palmer v. People,* 162 Colo. 92, 100, 424 P.2d 766, 770 (1967) (question of sanity or insanity is solely one for the jury); *Mundy v. People,* 105 Colo. 547, 551, 100 P.2d 584, 586 (1940) ("[E]ven though no witness has expressed the opinion that the accused was or is insane, it none the less is the fundamental duty of the court to submit both pleas to the jury."); *Ingles v. People,* 92 Colo. 518, 523, 22 P.2d 1109, 1111 (1933) (defendant has right for jury to pass on defendant's insanity as long as the issue was properly raised by special plea). The holdings of these prior decisions are not dispositive of the issue before us because they interpreted statutory schemes which plainly required the jury to render a verdict on the issue of insanity once the defendant had raised the issue by specific plea. In *Mundy* and *Ingles,* for example, the statute in question provided that "[i]f the *plea* is 'not guilty by reason of insanity at the time of the alleged commission of the crime,' ... the jury shall be given a form with the words 'not guilty by reason of insanity.'" *See* 105 Colo. at 549–50, 100 P.2d at 585, 92 Colo. at 522, 22 P.2d at 1111 (emphasis add-ed) (quoting ch. 90, sec. 4, § 510, 1927 Colo. Sess. Laws).

Similarly, in *Henderson v. People,* 156 Colo. 229, 397 P.2d 872 (1965), we reversed the trial court's directed verdict of sanity and held that even where the prosecution and the defendant have not "'offered any evidence even remotely related to the issue raised by the plea of insanity ... defendant, had he so desired, was entitled to have appropriate forms of verdict on this issue submitted to the jury.'" *Id.* at 234–35, 397 P.2d at 875 (quoting *Cruz v. People,* 147 Colo. 528, 536, 364 P.2d 561, 565 (1961)). As in *Ingles* and *Mundy,* however, specific statutory language compelled the conclusion that the issue of sanity must be submitted to the jury once a defendant pleads "not guilty by reason of insanity." *See* C.R.S.1953, § 39–8–4(1) ("In such trial *on the plea* of not guilty by reason of insanity the jury shall return a verdict either that the defendant was sane at the time the offense was committed or that he was insane at the time the offense was committed.") (emphasis added).

The holdings of these decisions were driven by plain, unambiguous statutory language. In 1972 the General Assembly chose to alter the procedure by which a plea of insanity is resolved. Although the General Assembly continued to require that a defendant may only raise the issue of insanity through a specific plea, *see* ch. 44, sec. 1, § 39–8–103(1), 1972 Colo. Sess. Laws 190, 226, it no longer provided that the jury must render a verdict on the sanity issue once the defendant has pleaded "not guilty by reason of insanity." *See* ch. 44, sec. 1, § 39–8–105, 1972 Colo. Sess. Laws 190, 226–27. In addition, the legislature codified the presumption of sanity, providing that every person is presumed to be sane until "evidence of insanity is introduced." Ch. 44, sec. 1, § 39–8–105(2), 1972 Colo. Sess. Laws 190, 226–27.

▪ Unlike the statutory provisions in effect prior to 1972, the current statutory procedure for resolving a plea of insanity fails to include language requiring the court to submit the issue of a defendant's sanity to a jury once the defendant has entered an insanity plea. Our decisions holding that sanity is always an issue for a jury, which were based

on insanity statutes which unambiguously stated such a requirement, are no longer controlling. We conclude that Colorado's statutory procedure does not require the sanity issue to be submitted to the jury where no evidence of insanity has been introduced.

The defendant argues that while the statutory framework for resolving insanity pleas does not expressly require that the sanity issue be submitted to the jury once an insanity plea is made, neither does it forbid such a procedure. Although it is true that the Colorado Code of Criminal Procedure does not expressly provide whether the court or a jury is to make the initial "any evidence of insanity" determination, we do not agree that the statutory framework for resolving insanity pleas is silent on the issue.

First, if we were to continue to require a trial court to submit the sanity issue to the jury, in the absence of evidence of insanity but after the defendant has entered a specific plea, we would be giving no effect to the legislature's omission of prior statutory language stating such a requirement. If the legislature intended that an insanity plea should automatically entitle a defendant to a jury determination of the issue, it would not have deleted clear language setting forth such a requirement. *See Colorado Ground Water Comm'n v. Eagle Peak Farms, Ltd.,* 919 P.2d 212, 218 (Colo.1996) (we should not presume that deletions and substitutions of statutory language are idly made); *Grover v. Industrial Comm'n,* 759 P.2d 705, 710 (Colo. 1988) (" 'The deletion of statutory language by the legislature renders the language inoperative and indicates that the legislature has admitted a different intent.' ") (quoting *Deremer v. Workmen's Compensation Appeal Bd.,* 61 Pa.Cmwlth. 415, 433 A.2d 926, 928 (1981)).

Second, the legislature has expressly defined insanity as an affirmative defense to a crime. *See* §§ 18–1–802 & 805, 8B C.R.S. (1986); *People v. Serravo,* 823 P.2d 128, 140 (Colo.1992) ("[I]nsanity remains an affirmative defense to a crime."); *People v. Chavez,* 629 P.2d 1040, 1047 (Colo.1981) ("A plea of not guilty by reason of insanity is a plea in the nature of confession and avoidance.") An affirmative defense does not become a matter for consideration by a jury until some quantum of evidence relevant to the affirmative defense is admitted. Section 18–1–407, 8B C.R.S. (1986) sets forth the general procedure for resolving affirmative defenses:

(1) "Affirmative defense" means that unless the state's evidence raises the issue involving the alleged defense, the defendant, to raise the issue, shall present some credible evidence on that issue.

§ 18–1–407(1), 8B C.R.S. (1986). By the plain meaning of this statute, only when some credible evidence supports an affirmative defense is the prosecution required to disprove it as though it were another element of the offense. *See* § 18–1–407(2), 8B C.R.S. (1986) ("If the issue involved in an affirmative defense is raised, then the guilt of the defendant must be established beyond a reasonable doubt as to that issue as well as all other elements of the offense."); *Serravo,* 823 P.2d at 140 (prosecution need only disprove affirmative defense of insanity when credible evidence of insanity is introduced).

In the absence of express statutory language to the contrary, the threshold determination as to whether some credible evidence exists to support an affirmative defense is a matter of law for the court to decide. *See, e.g., Lybarger v. People,* 807 P.2d 570, 579 (Colo.1991) ("The question whether there is credible evidence to support an affirmative defense is a question for the court to resolve."); *People v. Fuller,* 781 P.2d 647, 651 (Colo.1989) (instruction embodying defense theory must be given to jury if it is supported by evidence); *People v. Dillon,* 655 P.2d 841, 845 (Colo.1982) (upholding trial court's refusal to give self-defense instruction where no evidence supported defense theory); *People v. Traubert,* 625 P.2d 991, 993 (Colo.1981). If a trial court determines as an issue of law, that no evidence exists in the record to support an affirmative defense, there is no issue of fact for the jury to resolve.

Nothing in the current statute defining the procedure for resolving an insanity defense indicates that the legislature intended to make the procedure for resolving the affirmative defense of insanity different than it is for resolving other affirmative defenses.

Under section 18–1–407(2), a defendant has not "raised the issue" of the affirmative defense of insanity, in the sense that it has become an issue for consideration by the factfinder, until the court determines credible evidence on that issue has been presented. *See* § 18–1–407(2), 8B C.R.S. (1986).

We hold that Colorado's statutory procedure does not permit the issue of sanity to be submitted to the jury where no evidence of insanity has been presented. Under this statutory procedure, if a trial court properly determines that no evidence of insanity has been introduced, it should not submit the issue to the jury because the presumption of sanity has not been rebutted.

### B.

We next address the question of whether the Sixth Amendment right to a trial by jury in criminal cases requires the issue of sanity to be submitted to a jury in the absence of any evidence of insanity. The court of appeals concluded that the trial court effectively directed a verdict against the defendant by instructing the jury of the presumption of sanity and the lack of evidence of insanity. *Hill,* 920 P.2d at 830. The court of appeals reasoned that the instruction violated the defendant's Sixth Amendment right to a jury trial by essentially instructing the jury to find the defendant sane. *See id.* We agree that the instruction amounted to a directed verdict against the defendant on the sanity issue, but we do not agree that the defendant's Sixth Amendment right to a trial by jury was violated.

Hill argues that because the Sixth Amendment guarantees a criminal defendant the right to a jury trial, the trial court committed reversible error by instructing the jury that the defendant was presumed sane and that no evidence of insanity had been presented. The court of appeals agreed with this conclusion, and stated that "by removing the determination of defendant's sanity from the province of the jury, [the trial court] rendered the trial structurally defective and violated defendant's Sixth Amendment right to a jury trial." *Id.* at 830.

In a criminal trial "a judge may not direct a verdict for [the prosecution], no matter how overwhelming the evidence." *Sullivan v. Louisiana,* 508 U.S. 275, 277, 113 S.Ct. 2078, 2080, 124 L.Ed.2d 182 (1993). The Sixth Amendment right to a trial by jury "require[s] criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *United States v. Gaudin,* — U.S. —, —, 115 S.Ct. 2310, 2313, 132 L.Ed.2d 444 (1995). If a trial court errs by directing a verdict against the defendant on an essential element of the offense, the trial may be rendered structurally defective and entitle the defendant to a new trial. *See Sullivan,* 508 U.S. at 281, 113 S.Ct. at 2082 (trial structurally defective where erroneous jury instructions precluded jury from making "beyond a reasonable doubt" finding). We recently found that a defendant had a Sixth Amendment right to have a jury determine the issue of materiality in a perjury prosecution because we determined that materiality is an essential element of perjury. *See People v. Vance,* 933 P.2d 576, 578 (Colo.1997). However, an accused has no constitutional right to a jury determination of issues which do not implicate the prosecutorial burden of proving the substantive elements of the offense with which the accused is charged. *See Gaudin,* — U.S. at —, 115 S.Ct. at 2320.

We determined in our discussion of Colorado's statutory procedure for raising the issue of sanity that insanity is an affirmative defense. We must now consider whether sanity should be treated as an element of the charges brought against Hill for Sixth Amendment purposes.

In *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), the United States Supreme Court upheld a state law which placed the burden on the defendant to prove the affirmative defense that he acted under extreme emotional disturbance for which there was a reasonable explanation. The Court disagreed with the defendant's contention that, by placing the burden on him to prove the defense, the state law violated the Due Process Clause of the United

States Constitution. *Id.* at 205, 97 S.Ct. at 2324. In particular, the Court rejected the defendant's argument that, notwithstanding its legislative classification as an affirmative defense, extreme emotional disturbance constituted an element of the crime of murder:

> We thus decline to adopt as a constitutional imperative ... that a State must disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused.... [T]he Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged. Proof of the non-existence of all affirmative defenses has never been constitutionally required....

*Id.* at 210, 97 S.Ct. at 2327.

■ Under the Court's reasoning in *Patterson,* sanity is not treated as an element of an offense in Colorado, for purposes of due process, prior to the introduction of evidence of insanity. *See* 432 U.S. at 206–07, 97 S.Ct. at 2324–26. Until evidence of insanity is introduced, the prosecution need only prove beyond a reasonable doubt those elements which are set forth in the definition of the offense with which the defendant is charged. *See id.* at 210, 97 S.Ct. at 2327.

■ In *Hendershott v. People,* we noted the distinction between the insanity issue and the prosecution's burden of proving *mens rea:*

> A person who is criminally insane is excused from criminal responsibility for his actions because, due to a mental disease or defect, he lacks the capacity to distinguish right from wrong with respect to the act or to adhere to the right or refrain from the wrong. This is not to say, however, that legal sanity is a proxy for *mens rea.* The prosecution's burden of proof on the requisite *mens rea* for a crime is no less where the defendant has previously been adjudicated legally sane in a sanity trial than in a prosecution where the sanity issue has not been raised at all.

653 P.2d 385, 394 (Colo.1982). A finding of insanity precludes the possibility that a de-

fendant possessed the requisite *mens rea* to commit the charged crime, *see Serravo,* 823 P.2d at 140, but the requirement that some evidence of insanity be introduced before the prosecution must prove sanity beyond a reasonable doubt does not impermissibly shift the burden to the defendant of disproving any statutory *mens rea* element. If a defendant is found to have been sane at the time of the offense, the prosecution must still prove, beyond a reasonable doubt, any applicable *mens rea* element. *See Leland v. Oregon,* 343 U.S. 790, 794, 72 S.Ct. 1002, 1005, 96 L.Ed. 1302 (1952) (rule requiring defendant to prove insanity does not violate constitutional mandate that the prosecution prove all elements of crime, including *mens rea* element, beyond a reasonable doubt); *Leach v. Kolb,* 911 F.2d 1249, 1255 (7th Cir.1990) (where statute defines insanity as affirmative defense, "a finding of insanity is dispositive only on the question of whether the accused is to be held criminally responsible for committing the charged offense; it is not determinative of whether the elements of the offense ... have been established."); *People v. Morgan,* 637 P.2d 338, 341 (Colo.1981) ("The sanity trial is designed to determine whether the defendant was sane or insane at the time of the alleged offense, and the issue of guilt or innocence plays no part in the resolution of this issue.")

The trial court's "directed verdict" of sanity in the present case did not impermissibly lessen the prosecution's burden of proving each and every element of the crime of aggravated robbery as that crime is statutorily defined. Only if the trial court had directed a verdict against the defendant after some evidence of insanity had been introduced would it have impermissibly lessened the prosecution's burden. *See* § 16–8–105(2), 8A C.R.S. (1986) ("[O]nce any evidence of insanity is introduced, the people have the burden of proving sanity beyond a reasonable doubt."); *Lybarger,* 807 P.2d at 579 (court must determine whether credible evidence raises issue of affirmative defense, at which point "the prosecution bears the burden of establishing the defendant's guilt ... 'as to that issue as well as all other elements of the offense.'") (quoting § 18–1–407(2), 8B C.R.S. (1986)). Since sanity must be proven beyond

a reasonable doubt once any evidence of insanity is introduced, a directed verdict of sanity after any evidence of insanity is presented would violate the defendant's Sixth Amendment right to a trial by jury. *See Gaudin,* — U.S. at —, 115 S.Ct. at 2320 ("The Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged."); *Black's Law Dictionary* 520 (6th ed. 1990) (defining elements of a crime as "those constituent parts of a crime which must be proved by the prosecution to sustain a conviction.")

State legislatures generally have considerable flexibility in defining the elements of criminal offenses. *See Patterson,* 432 U.S. at 210, 211 n. 12, 97 S.Ct. at 2327, 2327 n. 12; *Vega v. People,* 893 P.2d 107, 113–14 (Colo. 1995). Consequently, what one state defines as an element of an offense another state may define as an affirmative defense or a "sentencing factor." Nevertheless, such reallocations of burdens of proof are, in most cases, constitutionally permissible because "in determining what facts must be proved beyond a reasonable doubt the [legislature's] definition of the elements of the offense is usually dispositive." *McMillan v. Pennsylvania,* 477 U.S. 79, 85, 106 S.Ct. 2411, 2415, 91 L.Ed.2d 67 (1986).

A legislature's authority to define the elements of criminal offenses is not without limits. Its power to "regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion," does not include the power to " 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' " *Patterson,* 432 U.S. at 201–02, 97 S.Ct. at 2322 (quoting *Speiser v. Randall,* 357 U.S. 513, 523, 78 S.Ct. 1332, 1341, 2 L.Ed.2d 1460 (1958)); *see McMillan,* 477 U.S. at 86–87, 106 S.Ct. at 2416 (Due Process Clause forbids states from allocating burdens of proof so as to discard the presumption of innocence). However, the United States Constitution does not prevent state legislatures from placing the initial burden of proving insanity on the defendant. *See Patterson,* 432 U.S. at

205, 97 S.Ct. at 2324; *Leland,* 343 U.S. at 792–95, 72 S.Ct. at 1004–06 (Due Process Clause not violated by statute requiring defendant to prove insanity beyond a reasonable doubt).

Contrary to the defendant's assertion, our prior cases have not held that a defendant has a constitutional right to a jury trial on the issue of insanity in all criminal cases where the defendant seeks to utilize that defense. *See Mundy,* 105 Colo. at 551, 100 P.2d at 586 ("*[U]nder the statute* the *making* of the insanity plea and not the *state of the evidence,* calls for the special form of verdict.") (first emphasis added). In *Ingles,* for example, we held that the statute requiring a defendant to specially plead insanity was constitutional—despite the fact that it effectively precluded the issue from being considered if the defendant failed to follow proper procedure—because "the substance of the defendant's right to a jury trial on the question of insanity has been preserved; the procedure only has been changed." 92 Colo. at 523, 22 P.2d at 1111.

In *People ex rel. Juhan v. District Court,* 165 Colo. 253, 439 P.2d 741 (1968), we found a Colorado statute which required the defendant to prove insanity by a preponderance of the evidence in violation of due process on state constitutional grounds, recognizing that there was no federal due process violation. Although we stated that "[o]ne accused of crime is entitled to raise and have a jury pass upon the question of whether he was sane or insane when he committed the act with which he is charged," we reiterated that the legislature may change the method by which the defense is resolved as long as its action does not force the defendant to prove insanity after the issue is properly raised. *Id.* at 258–59, 439 P.2d at 744. Thus, we recognized that a statutory requirement that some evidence of insanity be produced before the prosecution must prove sanity beyond a reasonable doubt is constitutionally permissible:

"In a criminal case the defendant can assert as many defenses *as can be supported by the evidence.* If affirmative defenses such as self-defense or alibi are presented the issues thereon are tried as part of the criminal case, and if any such defense rais-

es in the mind of a jury a reasonable doubt as to the defendant's guilt he should be acquitted. The defense of insanity stands upon the same footing."

*Id.* at 259, 439 P.2d at 745 (emphasis added) (quoting *Becksted v. People,* 133 Colo. 72, 82–83, 292 P.2d 189, 195 (1956)). In the present case, moreover, section 16–8–105(2), 8A C.R.S. (1986) only places on the defendant the burden of producing some evidence of insanity as a matter of procedural efficiency. The prosecution continues to shoulder the burden of proving sanity beyond a reasonable doubt after any evidence of insanity is presented.

The requirement that the defendant initially produce evidence of insanity neither offends any "fundamental principle of justice" nor compromises the prosecutorial burden of proving all statutorily defined elements of a criminal offense beyond a reasonable doubt. We hold that the Sixth Amendment right to a trial by jury in criminal cases does not require the issue of sanity to be submitted to a jury in the absence of any evidence of insanity.

### III.

 In the present case, the trial court determined as a matter of law that no evidence of insanity had been introduced, and then instructed the jury of its finding and submitted special verdict forms to the jury on the issue of sanity. Since we hold that a trial court may direct a verdict against the defendant on the issue of sanity if no evidence of insanity is introduced, in accordance with Colorado's statutory procedure and without violating the defendant's Sixth Amendment right to a jury trial, the trial court was not required to submit the sanity issue to the jury. We do not approve of submitting the issue of sanity to the jury where the court has determined that no evidence of insanity has been presented. However, instructing the jury that no evidence of insanity had been presented was tantamount to a directed verdict, which is appropriate where no evidence of insanity is introduced. We perceive no error.

Although we do not review the trial court's finding that there was no evidence of insanity, we emphasize that a trial court may not assess the credibility of witnesses or the weight of evidence in determining if evidence of insanity has been introduced. *See Lybarger,* 807 P.2d at 579. The trial court's task is to review the record and determine if there is evidence which legally supports an insanity theory.[6] In Colorado, *any* evidence of insanity is legally sufficient to support an insanity defense and rebut the presumption of sanity.

We hold that Colorado's statutory procedure and the defendant's Sixth Amendment right to have a jury determine his guilt or innocence do not require that the question of sanity must be submitted to a jury where no evidence of insanity is introduced. We reverse the judgment of the court of appeals and return to that court with instructions to reinstate the judgment of sanity and remand to the trial court.

---

6. We note also that a rule permitting the court to determine if there is sufficient evidence of insanity to make it a jury issue is consistent with the practice of a number of federal and state courts. *See United States v. Keen,* 96 F.3d 425, 430 (9th Cir.1996); *United States v. Long Crow,* 37 F.3d 1319, 1323 (8th Cir.1994); *United States v. Den-* *ny–Shaffer,* 2 F.3d 999, 1015 n. 16 (10th Cir. 1993); *Yocum v. State,* 325 Ark. 180, 925 S.W.2d 385, 390 (1996); *Riggleman v. State,* 33 Md.App. 344, 364 A.2d 1159, 1164 (Spec.App.1976); *People v. Savoie,* 419 Mich. 118, 349 N.W.2d 139, 143 (1984); *see also Leach,* 911 F.2d at 1256 (collecting cases).