OPINION
{¶ 1} Appellant, John Robert Furman, appeals from the October 22, 2001 judgment entry of the Lake County Court of Common Pleas, in which he was convicted and sentenced on the charges of domestic violence and abduction.
 {¶ 2} On March 23, 2001, the grand jury secretly indicted appellant on one count of domestic violence, in violation of R.C.2919.25(A), a felony of the fifth degree, and one count of abduction, in violation of R.C. 2905.02(A)(2), a felony of the third degree.[1]
Appellant waived his right to be present at the arraignment and entered a plea of not guilty to the charges. Appellant's prior conviction of domestic violence was stipulated in writing and signed by both sides. A jury trial commenced on July 16, 2001.
 {¶ 3} The evidence at trial revealed the following: On October 4, 2000, Samantha Walton ("Walton"), who was appellant's live-in girlfriend and mother of his son, was at work at the Broadfield Manor nursing home when appellant arrived looking for her. Appellant, who "seemed kind of freaked out" told Walton that their son had been injured by way of a fall and was in the hospital. Appellant informed Walton that his mother and sister had taken their son to the emergency room, and that she needed to accompany him there. Walton notified her supervisor of the situation, and she and appellant left the nursing home.
 {¶ 4} Upon driving away from the nursing home, appellant told Walton that he had been lying about their son being injured. Appellant then began asking Walton whether Harold, her ex-boyfriend, had been at their home the previous night while he was working. When Walton denied having anyone at the house, appellant backhanded her, hitting her in the left eye. Appellant proceeded to ask Walton how it felt to know she was going to die. Walton then grabbed the steering wheel in an attempt to run the car off the road, but she failed. Appellant maneuvered the automobile back onto the road. Walton opened the passenger side door in an attempt to jump out, but appellant grabbed her ponytail and yanked her back into the vehicle. Walton was scared and wanted to remove herself from the situation, but appellant had her ponytail wrapped around his hand, which prevented her from exiting the car.
 {¶ 5} Appellant proceeded to travel across Lake County into Ashtabula County where he and Walton lived. After arriving at their residence, appellant confronted Walton's two older sons as to whether Harold had visited Walton while he was at work. Appellant then became concerned about Walton's eye, so he drove her to his aunt's house. His aunt, who worked in a hospital, examined Walton's eye. Appellant applied ice to the eye, and appellant and Walton drove back to their house. Walton testified that she did not attempt to contact the police on October 4, 2000, because she "was exhausted mentally, emotionally, [and she was] afraid."
 {¶ 6} On October 6, 2000, Walton contacted appellant's parole officer about what had happened. An officer from the Ashtabula City Police Department traveled to her home and took appellant into custody. Walton then went to the Madison Township Police Department and filed a written statement regarding the incident. Sergeant James Dooley ("Dooley") took the report. He described Walton's left eye as "swollen and bruised and part of the white portion of the eye was bloody." Dooley photographed the injuries to Walton's eye.
 {¶ 7} About a week after the incident, Walton sought medical treatment for her eye. After the doctor examined her eye, he prescribed an antibiotic ointment for her to use. Walton's supervisor took the stand at trial and related that appellant had come to the Broadfield Manor on October 4, 2000, and told Walton that their son had been injured, so Walton left with appellant. Walton's supervisor further testified that when Walton returned to work on October 7, 2000, she had a noticeable injury to her left eye.
 {¶ 8} After the state presented its case-in-chief, appellant moved for a judgment of acquittal pursuant to Crim.R. 29, which was overruled. Appellant presented no witnesses, but renewed his Crim.R. 29 motion, which was again overruled.
 {¶ 9} The jury found appellant guilty of domestic violence and abduction. He was sentenced to one year in prison for domestic violence and two years in prison on abduction. The sentences were to run concurrently with each other, and appellant received thirty-one days credit for time already served. Appellant timely filed the instant appeal and now assigns the following as error:
 {¶ 10} "[1.] The trial court erred to the prejudice of [appellant] by failing to grant a motion for mistrial when the prosecutor engaged in misconduct by mentioning that [appellant's] prior conviction involved the same victim in violation of a court order and thus violating [appellant's] due process rights and rights to fair trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Sections 5 and 10, Article I of the Ohio Constitution.
 {¶ 11} "[2.] The trial court erred to the prejudice of [appellant] when it overruled objections of the defense to instances of prosecutorial misconduct thus violating [appellant's] due process rights and rights to fair trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Sections 5 and 10, Article I of the Ohio [Constitution].
 {¶ 12} "[3.] The trial court erred to the prejudice of [appellant] when it denied his motion for acquittal made pursuant to Crim.R. 29.
 {¶ 13} "[4.] The trial court erred to the prejudice of [appellant] when it returned a verdict of guilty against the manifest weight of the evidence."
 {¶ 14} For his first assignment of error, appellant alleges that his due process rights were violated, and he was denied a fair trial when the trial court failed to grant a motion for mistrial because the prosecutor engaged in misconduct by mentioning that his prior conviction involved the same victim despite a court order prohibiting this specific disclosure and despite the fact that the comment went outside the scope of the evidence that had been presented to the jury.
 {¶ 15} Preliminarily, we note that at the commencement of the trial, an agreement between the prosecution and defense was reached, in which appellant agreed to stipulate to the fact that he had previously been convicted of domestic violence in Ashtabula County. The stipulation read as follows:
 {¶ 16} "On the 14th day of October, 1999, [appellant] was convicted of domestic violence, a felony of the fifth degree, in violation of [R.C. 2919.25(A)], following a trial by jury in Case No. 99-CR-101 in the Ashtabula County Court of Common Pleas.
 {¶ 17} "*** [T]he attorney for [appellant], *** Assistant Prosecuting Attorney, and [appellant] hereby consent to and join in the within stipulation by placing their signature upon this document."
 {¶ 18} Thereafter, on the morning of the trial, appellant's attorney filed a motion in limine requesting that the trial court order the prosecution to refrain from mentioning any prior acts of violence toward Walton with the exception of the incident mentioned in the stipulation. The record is unclear as to whether the trial court granted the motion. However, we will assume, as the state's brief did, that the trial court granted the motion.
 {¶ 19} The decision to grant or deny a motion for mistrial is also within the sound discretion of the trial court. State v. Garner (1995),74 Ohio St.3d 49, 59. Absent a showing that the accused suffered material prejudice, a reviewing court will not disturb the exercise of that discretion. State v. Sage (1987), 31 Ohio St.3d 173, 182. "Moreover, mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." Garner at 59.
 {¶ 20} Crim.R. 33(A) provides the grounds for granting a new trial and stated that: "[a] new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights: *** [m]isconduct *** of the prosecuting attorney ***." When a motion for a mistrial is premised upon allegations of prosecutorial misconduct, a determination must be made as to whether the defendant's substantial rights have been materially affected by the alleged misconduct. State v. Johnston (1988), 39 Ohio St.3d 48, 59. Thus, the court must determine if the defendant received a fair trial. Id. An appellate court will review the trial court's determination in this regard under a due process analysis, rather than an abuse of discretion analysis. Id.
 {¶ 21} Furthermore, "a prosecutor has wide latitude in closing arguments. As long as an improper comment is isolated and does not deprive the defendant of a fair trial, it will not constitute reversible error. *** `The test for prosecutorial misconduct is whether remarks are improper and, if so, whether they prejudicially affected substantial rights of the accused.' (***)" State v. Bleasdale (Sept. 6, 1996), 11th Dist. No. 95-A-0047, 1996 WL 535283, at 2.
 {¶ 22} Here, the prosecutor made a statement regarding appellant's previous conviction involving Walton as the victim. Appellant's attorney objected, and the trial court sustained appellant's objection and instructed the jury to disregard the comment. Appellant's attorney then moved for a mistrial, which the trial court overruled. Although the prosecution's conduct was questionable, appellant has failed to demonstrate that any potential for prejudice was not adequately dealt with by the vigilance of the trial court. He further failed to show that he was otherwise denied a fair trial as a result of the prosecution's actions. As to the other improper remarks appellant claims the prosecutor made, since there was no objection, the remainder of the alleged improper comments would invite reversal only if the trial court's allowance of them constituted plain error, which in this case it did not. Appellant's first assignment of error lacks merit.
 {¶ 23} Under the second assignment of error, appellant argues that the trial court erred when it overruled his objections for two instances of prosecutorial misconduct that took place during closing arguments when the prosecutor shifted the burden of proof to appellant and mischaracterized the evidence presented during the trial. Appellant asserts that he objected to the alleged misconduct, but his objections were overruled.
 {¶ 24} In order to make a finding of prosecutorial misconduct, a reviewing court must decide whether the challenged statements were improper, and if so, whether the remarks affected a defendant's substantial rights. State v. Jenks (1991), 61 Ohio St.3d 259, 281. Again, a prosecutor has wide latitude in summation and may comment upon the testimony and other evidence and may suggest conclusions to be drawn therefrom. State v. Freeman (2000), 138 Ohio App.3d 408, 419.
 {¶ 25} Appellant alleges error with the following comment the prosecutor made:
 {¶ 26} "The next thing we had to prove [is that] he did not have a privilege to commit the abduction and there was no evidence introduced, the defense did not put on any evidence, didn't call any witnesses, so you can find that he did not have a privilege to grab [Walton] by the hair and yank her back in and physically restrain her."
 {¶ 27} Appellant's attorney objected to the above statement, but the trial court overruled the objection. Appellant argues that the nature of the comment was to shift the burden of proof from the state to him.
 {¶ 28} In Mullaney v. Wilbur (1975), 421 U.S. 684, 704, the United States Supreme Court held that the Due Process Clause requires that the state has the burden of proving every element of the crime beyond a reasonable doubt, there is no due process violation. However, Mullaney was implicitly modified by Patterson v. New York (1977), 432 U.S. 197, in which the Supreme Court found a New York statute not to be unconstitutional even though it placed the burden of persuasion upon the accused of the "affirmative defense" of extreme emotional disturbance. The distinction made by the Supreme Court was that the Maine statute in Mullaney, unlike the New York statute in Patterson, shifted to the defendant the burden of proof with respect to an essential element of the crime. Therefore, pursuant to Patterson and Mullaney, the state may properly place the burden of proving affirmative defenses on a defendant, but the state may not presume that an element of a crime exists as a result of given conduct and then place the burden of showing otherwise on the defendant. Patterson makes it clear that so long as a jury is instructed that the state has a burden of proving every element of the crime beyond a reasonable doubt, there is no due process violation. See, also, Sandstrom v. Montana (1979), 442 U.S. 510.
 {¶ 29} Here, at the outset of the comment, the prosecutor specifically stated that it had the burden by saying that "[t]he next thing we had to prove ***." It is our view that even though the prosecutor erred in mentioning that the defense had not put forth any evidence to refute the idea that the abduction was committed without privilege, the trial court properly instructed the jury as to the burden of proof in a criminal case. Thus, any error that occurred was harmless.
 {¶ 30} Appellant also argues that the prosecutor committed misconduct in relation to a comment made during closing argument regarding a police visit to Walton's house on October 5, 2000. The following exchange occurred between appellant's trial counsel and Walton during recross-examination:
 {¶ 31} "Q. Isn't it true that on October 5th the Police Department came to your house looking for [appellant] and that you hid inside of that house and refused to answer the door.
 {¶ 32} "A. Did they come looking for [appellant], no.
 {¶ 33} "Q. The police came to your house on October 5th?
 {¶ 34} "A. Yes, they did.
 {¶ 35} "Q. And you wouldn't answer the door, correct?
 {¶ 36} "A. Correct.
 {¶ 37} "Q. Okay. So you were in fear for you life and the police are at your house the day after this incident occurred and you refuse to answer the door.
 {¶ 38} "A. Yes.
 {¶ 39} "Q. Did you know it was the police?
 {¶ 40} "A. Yes.
 {¶ 41} "Q. Did you think it was [appellant]?
 {¶ 42} "A. [Appellant] was with me in the house."
 {¶ 43} During closing argument, the prosecutor referred to the foregoing testimony and stated that: "[n]ow this suggestion that on October 5th when some police officer came to the residence and knocked on the door how come [Walton] didn't open the door, well, if you recall [Walton] testified under oath she didn't open the door, but the reason she didn't open the door was because [appellant] was there too." Appellant's attorney objected to this comment, and the objection was overruled. The prosecutor explained:
 {¶ 44} "[Walton] testified that [appellant] was present when that policeman knocked on the door *** could that be why she didn't open the door because [appellant] was standing right there in the house. Why didn't [appellant] open the door? She reported the incident the very next day ***."
 {¶ 45} Based on the context of the questioning and the remarks made during closing arguments, it is our determination that the prosecutor was asking the jury to draw an inference, pursuant to Freeman, supra, as to what had transpired on October 5, 2000, when the police arrived at the residence of Walton and appellant. Hence, appellant's second assignment of error is without merit.
 {¶ 46} As appellant's third and fourth assignments of error raise questions regarding the adequacy of the evidence, they will be addressed in a consolidated fashion. In his third assignment of error, appellant alleges that the trial court erred in denying his Crim.R. 29 motion for acquittal with respect to the abduction and domestic violence charges. In his fourth assignment of error, appellant claims that his convictions were against the manifest weight of the evidence. Appellant alleges that the evidence at trial did not establish beyond a reasonable doubt that he restrained the liberty of another by force or threat, that he created a risk of physical harm to the victim, and that he caused or attempted to cause physical harm to a family or household member.
 {¶ 47} In State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus, the Supreme Court of Ohio established the test for determining whether a motion for acquittal is properly denied, and the Court stated that "[p]ursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." Thus, when an appellant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the state. As this court stated in State v.Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 WL 738452, at 4-5:
 {¶ 48} "`"(***) (T)he test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiryabout due process. It raises a question of law, the resolution of whichdoes not allow the court to weigh the evidence. ***"'
 {¶ 49} "In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence `in a light most favorable to the prosecution,' *** `(a) reviewing court (should) not reverse a jury verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.' ***." (Emphasis sic.) (Citations omitted.)
 {¶ 50} An appellate court must look to the evidence presented to decide if the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt. State v. March (July 16, 1999), 11th Dist. No. 98-L-065, 1999 WL 535675, at 3. The evidence is to be viewed in a light most favorable to the prosecution when conducting this inquiry.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Furthermore, the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. State v. Dennis (1997),79 Ohio St.3d 421, 430.
 {¶ 51} Applying this standard to the matter at hand, the state was required to present sufficient evidence to establish that appellant committed the offenses of abduction and domestic violence. The offense of abduction is set forth in R.C. 2905.02(A)(2), which states that "[n]o person, without privilege to do so, shall knowingly *** [b]y force or threat, restrain the liberty of another person, under circumstances which create a risk of physical harm to the victim, or place the other person in fear ***." The offense of domestic violence, which is set forth in R.C. 2919.25(A), provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member."
 {¶ 52} Hence, the state needed to present sufficient evidence that appellant by force or threat knowingly restrained Walton of her liberty, which created a risk of physical harm and placed her in fear. The state also had to prove that appellant knowingly caused or attempted to cause physical harm to a household member, i.e. Walton.
 {¶ 53} In the case at hand, the state supplied evidence that even though Walton voluntarily left work with and entered an automobile with appellant, she did so because she was under the belief that their son had been injured. Appellant told her that he would take her to the hospital to see their son. After she entered the car and as they were driving away, he informed her that he was lying. He then questioned her as to whether anyone was at their home while he was at work, and when she said "no," he backhanded her, which caused her eye to swell and become bloody. Walton further testified that after she realized she had been deceived, she tried to grab the steering wheel in an attempt to swerve the car, but she was unsuccessful. Walton also tried to jump out of the car when appellant grabbed her ponytail and prevented her from exiting.
 {¶ 54} Therefore, based on what occurred in the car, it is our position that the evidence supports a factual conclusion that Walton was physically harmed and/or knowingly placed in fear by appellant by the use of force or threat. She was restrained despite her attempt to exit the truck. From this evidence, the jury could reasonably conclude that appellant transported Walton from her place of employment and restrained her for the purpose of causing her physical harm and/or placing her in fear. The record provided sufficient evidence presented at trial to demonstrate that appellant committed an abduction and domestic violence.
 {¶ 55} Appellant also argues that the verdict was against the manifest weight of the evidence. Though the evidence may have been sufficient to sustain a guilty verdict, the issue of manifest weight requires a different type of analysis. Schlee, supra, at 5. When addressing whether a verdict is against the manifest weight of the evidence, a reviewing court examines "`the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. ***'" State v. Davis (1988), 49 Ohio App.3d 109, 113. A judgment of the trial court should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins (1997),78 Ohio St.3d 380, 387.
 {¶ 56} Here, appellant was convicted of abduction and domestic violence, which the state proved. It is within the discretion of the trier of fact to determine the credibility of witnesses and the weight to be given to their testimony. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The jury must have found the state's witnesses to be more credible. We conclude, after reviewing the record and weighing the evidence and all reasonable inferences, that the judgment of the trial court was supported by competent, credible evidence. Likewise, after an examination of the entire record, including Walton's testimony, the photographs of Walton, and the credibility of the witnesses who testified, it is our view that there was no manifest miscarriage of justice requiring the conviction to be reversed because a jury could reasonably conclude that appellant was guilty of the charged offenses. Appellant's third and fourth assignments of error are not well-founded.
 {¶ 57} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed.
JUDITH A. CHRISTLEY and DIANE V. GRENDELL, JJ., concur.
[1] On January 25, 2000, appellant was convicted of domestic violence, in violation of R.C. 2919.25(A). As a result of this conviction, he was indicted for a felony of the fifth degree rather than a misdemeanor of the first degree.